FILED
2022 Jul-13 AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| **AMANDA BALDUF,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 6:20-cv-02054-RDP** |
| | } | |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Amanda Balduf brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. Proceedings Below

Plaintiff filed her application for SSI on August 17, 2015, noting that her application alleged that her disability began on the same date. (Tr. 17, 84, 89, 394). On September 25, 2015, Plaintiff's application was denied and she filed a written request for a hearing before an Administrative Law Judge ("ALJ") on December 1, 2015.[1] (Tr. 82, 85, 86, 121). Plaintiff's request was granted and she appeared before ALJ Cynthia G. Weaver on October 31, 2018 for the first of two hearings. (Tr. 57). Plaintiff, her attorney Donald Herman Bevill, and Vocational

[1] Plaintiff's request for hearing was not filed within the required 60 days after receipt of Notice of Disapproved Claim. Plaintiff was granted a hearing nonetheless for showing Good Cause for Untimely Filing. (Tr. 119-21).

Expert ("VE") Rachel McDaniel were in attendance. (Tr. 57). The ALJ entered an unfavorable decision on November 26, 2018, finding that Plaintiff had not been under a disability within the meaning of 1614(a)(3)(A) of the Act since the date of filing, August 17, 2015, to the date of the decision. (Tr. 98-99).

Plaintiff filed a request for review with the Appeals Council ("AC"). That request was granted and on November 15, 2019, the AC entered an order vacating the November 26, 2018 decision and remanding the case for further proceedings.[2] (Tr. 110). On March 12, 2020, a second hearing was held before ALJ Weaver on remand. (Tr. 57). Plaintiff, her attorney Donald Herman Bevill, and VE Rachel McDaniel were again in attendance. (Tr. 37). The ALJ entered a decision on April 14, 2020, which denied that Plaintiff had been under a disability as defined by section 1614(a)(3)(A) of the Act since August 17, 2015. (Tr. 25-26). Plaintiff requested review of the April 14, 2020 decision but the AC denied the request on October 20, 2020. (Tr. 1-2). The decision, therefore, became the final decision of the Commissioner and the proper subject of this court's appellate review. (Tr. 3).

At the time of her supplemental hearing, Plaintiff was 37 years old (Tr. 394) and had a tenth-grade education. (Tr. 394, 464). Plaintiff had previously worked as a restaurant server, a certified nursing assistant in a hospital, and a hotel housekeeper. (Tr. 464). Plaintiff stopped working on December 31, 2011 due to a lack of work, but believes her medical conditions became severe enough to keep her from working on August 17, 2015. (Tr. 463-64). Plaintiff claims her medical conditions—daily seizures, mental difficulties, degenerative disc disease, and depression—limit her ability to work. (Tr. 463-64).

[2] The AC remanded the case and instructed the ALJ to (1) further evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 416.920(a), providing specific findings and rationale for each functional area, and (2) give further consideration to Plaintiff's residual functional capacity and provide appropriate rationale with specific references to evidence of record.

At her October 2018 hearing, Plaintiff testified that her seizures occur six to seven times a week. (Tr. 65). She further testified that she "used to" have anywhere from thirty to forty seizures in a week. (Tr. 68). In her March 2020 hearing, Plaintiff testified that she was suffering from five to seven seizures per day. (Tr. 43).

Plaintiff's medical records detail visits with multiple treating physicians, multiple prescriptions, and multiple emergency room trips for seizures. Plaintiff asserts that her first seizure occurred in 2003, and she was hospitalized for seizures several times in 2014. (Tr. 468). During Plaintiff's first hospital visit in January 2014, Plaintiff's mother stated she found Plaintiff in the midst of a seizure and she was difficult to arouse. (Tr. 758-759). Plaintiff's mother also stated that she manages all of Plaintiff's medications and that she may have accidentally given Plaintiff the wrong medicine. (Tr. 759). At a hospital visit in June 2014, Plaintiff sought care for a seizure, stating that she was out of her seizure medication (Keppra). (Tr. 812). Plaintiff stated that she had been "without seizure[s] until [she] missed [her] meds." (*Id*.). During a visit to Walker Baptist Medical Center emergency room in November 2014, Plaintiff claimed she had had four seizures over the previous five days and reported that her last seizure was either in February or March 2014. (Tr. 753). She did not experience seizures while in the emergency room. (*Id.*).

In March 2015, Plaintiff reported her last seizure had occurred six months prior. (Tr. 979). In July 2015, Plaintiff returned to the emergency room reporting she was having four to five seizures daily. (Tr. 974). Again, she did not experience seizures while under emergency care. (*Id.*). She visited the emergency room again in June 2016 for seizures, and was found to have low sodium, but her MRI and EEG testing were unremarkable, and again her seizures did not continue while under emergency care. (Tr. 1571).

Plaintiff reported on her Disability Report dated August 20, 2015 that she suffers from two to three seizures per day. (Tr. 464). In 2015, Dr. Ashley Thomas, a neurologist, diagnosed Plaintiff with epilepsy. (Tr. 119, 403, 405). Dr. Thomas indicated Plaintiff suffers from two to five seizures per day and noted that as a result of both her seizures and the side effects of her medications, Keppra and Lamictal, Plaintiff is unable to drive. (Tr. 405, 1239, 1493).

Plaintiff underwent her first EEG video monitoring in 2015 and was assessed for a period of 24 hours. (Tr. 1048). There was one episode recorded in the 24 hour period, which occurred after Plaintiff had tapered off her medication. (*Id.*). After Plaintiff's medication had been restarted, Plaintiff had no additional seizures and was discharged the following day. (Tr. 1048). Plaintiff underwent a second extended period of EEG video monitoring in 2017 after she reported new seizure events that commenced a year prior, diagnosed as pseudoseizures. (Tr. 1237). On that occasion, EEG monitoring was conducted for 36 hours and no episodes were reported during that time. (Tr. 1238). During a follow-up visit in June 2017, Dr. Thomas recommended Plaintiff attend a psychiatric evaluation for conversion disorder for her non-epileptic seizures. (Tr. 1236). During this visit, Plaintiff was found to have normal judgment.[3] (Tr. 1235).

In July 2018, Plaintiff reported to Dr. Thomas that her last epileptic seizure had occurred roughly three months prior, and that she wanted to completely eliminate her seizures so she could drive again and have more independence. (Tr. 2184). She also reported that she could go three to four weeks without any pseudoseizures, and that the pseudoseizures had reduced in length from ten minutes to two minutes. (Tr. 2184).

[3] Plaintiff was also found to have normal judgment at several other scheduled follow up visits for her epilepsy (at the Kirklin Clinic) with Dr. Thomas and Dr. Mary Katherine Dunne. (Tr. 1023, 1028, 1247, 1822, 2170, 2178).

In August 2018, Plaintiff complained of pseudoseizures but reported her medication had reduced her epileptic seizure frequency. (Tr. 1984). Dr. Thomas referred Plaintiff for a neuropsychological evaluation as "neurology thinks her increase in seizures are pseudoseizures and caused by anxiety." (Tr. 1984). Because Medicaid would not cover a neuropsychological evaluation, Plaintiff was instead referred (to the Kirklin Clinic) for psychiatric evaluation. (Tr. 1984). Plaintiff failed to attend this evaluation. (Tr. 39). Her reason was that she did not "want to have to be put on any other medication" and she wanted to cope with her depression and anxiety at home. (*Id*.).

In September 2018, Plaintiff was referred for a neuropsychological evaluation with Dr. Justin Anderson by the Alabama Disability Determination Services. (Tr. 1492). Dr. Anderson noted that the testing obtained may not have captured Plaintiff's "full ability level as present effort to task appeared suboptimal/variable." (Tr. 1492). Dr. Anderson's evaluation indicates that Plaintiff reported that she usually gets along well with co-workers and supervisors, and that her changes in jobs were due to the pursuit of better career opportunities. (Tr. 1494). The evaluation also notes that Plaintiff reported that she attends church and has no difficulty dealing with crowds in public places. (Tr. 1498). Plaintiff's assessment indicated she had good judgment. (Tr. 1495). Dr. Anderson found that Plaintiff can understand and remember simple instructions, sustain attention for extended periods of two hour segments on simple tasks, and have occasional superficial contact with coworkers and supervisors. (Tr. 1492). Plaintiff's tests showed, on the other hand, that she is only capable of rare contact with the public and has marked limitations in interacting socially and adapting to routine stressors of a general work environment. (Tr. 1492-93). Notably, Plaintiff's performance on a measure of efforts fell below the adequate cutoff

score, indicating that she was not applying adequate effort, thereby lowering the test's validity and reliability. (Tr. 1496).

**II. ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant

work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that step one was satisfied, as Plaintiff has not engaged in substantial gainful activity since August 17, 2015. *See* 20 C.F.R. § 404.1520(a)(4)(i). (Tr. 17). The ALJ also found that the second step was satisfied, as Plaintiff has the following severe impairments that significantly limit her ability to perform basic work activities: seizure disorder, conversion disorder, and tobacco abuse. (Tr. 17). *See* 20 C.F.R. § 404.1520(a)(4)(ii).

However, at the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equals any listing as provided by 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ specifically concluded that Plaintiff's impairments do not meet listing 11.02 for epilepsy. (Tr. 19). The listing requires a claimant to suffer from one or more of the listing's categories of seizures, despite adherence to prescribed treatment. (Tr. 19). In this case, medical evidence shows that Plaintiff's seizures are well controlled with prescribed medication and tend to arise from non-compliance or are non-epileptic in nature. (Tr. 20).

The ALJ also determined that further evaluation of Plaintiff's conversion disorder, likely causing her non-epileptic seizures, was limited by a lack of evidence. (Tr. 24). Further, the

evidence in the record that does address Plaintiff's conversion disorder indicates significant inconsistencies as to the frequency and severity of her pseudoseizures. (Tr. 24).

Even if an ALJ determines that step three was not met, the ALJ may still find disability under steps four and five, which require the ALJ to determine the claimant's RFC. 20 C.F.R. § 404.1520(e). Here, the ALJ found Plaintiff has the capacity to perform light work as defined by 20 C.F.R. § 416.967(b) with limitations. (Tr. 20). Her limitations include jobs that involve infrequent and well-explained workplace changes, and work that only requires frequent postural maneuvers. (Tr. 20). The ALJ determined that Plaintiff is able to understand, remember and apply simple instructions, concentrate for two hours at a time, and complete an eight-hour workday. (*Id*.). In order to determine Plaintiff's RFC, the ALJ carefully considered medical and other evidence, Plaintiff's combination of impairments, and Plaintiff's symptoms, to the extent the symptoms could be reasonably accepted as consistent with objective medical and other evidence. *See* 20 C.F.R. § 416.929. (Tr. 20).

Step four requires an ALJ to use the claimant's RFC to determine whether the claimant is capable of performing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). Here, the ALJ determined Plaintiff has no past relevant work and moved on to step five, which asks whether Plaintiff is able to perform other work in the national economy commensurate with her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v). (Tr. 24-25). Based on the testimony of the VE, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier II; cleaner and polisher; or inspector and hand packager (Tr. 25). Thus, the ALJ concluded Plaintiff was not disabled, as her impairments are not severe enough to meet a listing, and she has the capacity to work in jobs that exist in significant numbers in the national economy. *Id.*

## III. Plaintiff's Argument for Reversal and Remand

Plaintiff raises three arguments and asks the court to reverse the Commissioner's decision and remand the case for further proceedings. (Doc # 13 at 22). First, Plaintiff argues that the ALJ should have made an explicit finding as to whether she found Plaintiff malingering as to her subjective symptoms as a result of a conversion disorder. (*Id*. at 18). Second, Plaintiff argues that the ALJ erred in concluding that her conversion disorder is limited by a lack of evidence by failing to consider her ability and mental capacity to obtain treatment, and that the ALJ should have ordered additional testing to combat this lack of evidence. (*Id.* at 21-22). Third, Plaintiff argues that the ALJ erred in affording little weight to the opinion of Dr. Anderson. (*Id*. at 21).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other

citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

### A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints and Adequately Stated Her Reasoning in Finding that Plaintiff's Symptoms Were Not as Intense, Persistent, or Limiting as Plaintiff Alleged.

Plaintiff argues that the ALJ erred in concluding that her subjective symptoms of pseudoseizures, which she contends are a result of her conversion disorder, were non-credible. (Doc. # 13 at 18). Plaintiff argues the ALJ failed to adequately explain why she was non-credible as the ALJ did not make an express finding of malingering or exaggeration as to the nature of her conversion disorder. (*Id.*). Although Plaintiff relies on an Eighth Circuit decision to support her contention, the court will address her argument relying on Eleventh Circuit precedent. (*See id.* at 14-16).

The Commissioner is exclusively responsible for making credibility determinations and must consider the claimant's testimony of subjective symptoms and complaints in making a determination. 20 C.F.R. § 416.929; *see Foote v. Chater*, 67 F.3d 1553, 1560 (11th. Cir. 1995); *Bright-Jacobs v. Barnhart*, 386 F. Supp. 2d 1295, 1333 (N.D. Ga. 2004). The Commissioner's credibility determinations based upon the claimant's subjective symptoms may, but need not, be made explicitly. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A determination may be implied, as long as the determination is clear and apparent to a reviewing court so as to amount to a specific credibility finding. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.

1983); *Taylor v. Comm'r. of Soc. Sec.*, 213 F. App'x 778, 779-80 (11th Cir. 2006) (per curiam) (unreported).

When a claimant attempts to establish disability through their own testimony regarding subjective symptoms, the claimant must provide evidence of an underlying medical condition, *and* either (a) objective medical evidence confirming the severity of the alleged pain or symptom or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed symptom. 20 C.F.R. §§ 404.1529(a)-(c); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If an ALJ finds that the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's subjective symptoms, the ALJ then evaluates the intensity, persistence, and limiting effect of the claimant's subjective symptoms on her capacity for work. 20 C.F.R. § 404.1529(c); *Duval v. Comm'r. of Soc. Sec.*, 628 F. App'x 703, 711 (11th Cir. 2015) (per curiam) (unreported).

In making credibility determinations and evaluating the intensity of a claimant's subjective symptoms, an ALJ must consider all symptoms to the extent that these symptoms can reasonably be accepted as consistent with objective medical evidence, opinion evidence, and other evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3). However, when a claimant's subjective symptoms are a result of a conversion disorder — a type of somatoform[4] — a claimant's testimony may generally contradict the objective medical evidence because "that is precisely the nature of [] somatization disorder: the claimant actually believes that she is suffering from disabling medical conditions" even if those conditions are "illusory or less severe." *Bright-Jacobs*, 386 F. Supp. 2d at 1333. Therefore, an ALJ must ascertain whether the persistence and severity are real to the claimant,

[4] Dr. Roger Henderson, *Somatisation and Somatoform Disorders*, PATIENT.INFO, (Jan 1, 2017) https://patient.info/mental-health/somatisation-and-somatoform-disorders.

even if objective medical evidence contradicts the claimant's complaints, in order to make a determination as to their credibility. *Id.*

Here, the ALJ determined that Plaintiff's subjective symptoms were both inconsistent with the record and with her own statements throughout the course of her treatment. (Tr. 21). The ALJ did find that Plaintiff provided some evidence of seizure disorder and conversion disorder that could reasonably be expected to produce her subjective symptoms of seizures. (*Id.*). When an ALJ finds a claimant's medically determinable impairments could reasonably be expected to give rise to the claimed symptoms, the ALJ then must evaluate the subjective symptoms' intensity, persistence, and limiting effect on the claimant's capacity for work. 20 C.F.R. § 404.1529(c). The ALJ here explicitly determined that Plaintiff's claimed symptoms were inconsistent with the other evidence in the record, and substantial evidence supports the ALJ's finding that the intensity and persistence of Plaintiff's claimed seizures were not as severe as she states in her testimony. (Tr. 21, 24, 43). The ALJ referred to record evidence such as two extended video monitoring evaluations that only captured one epileptic event in total. (Tr. 1048, 1238). This evidence directly contradicts Plaintiff's testimony that she suffers from approximately five to seven seizures per day and that the seizures have consistently worsened since 2013. (Tr. 43, 48). Because the ALJ is required to consider all symptoms to the extent that the claimant's subjective symptoms can reasonably be consistent with the objective medical evidence when determining a claimant's credibility, here, substantial evidence supports the ALJ's finding that Plaintiff's testimony is not credible in regard to the intensity and persistence of her subjective seizure-related symptoms.

Subjective symptoms that arise as a result of a conversion disorder may generally be contradictory with objective medical evidence in nature. *Bright-Jacobs*, 386 F. Supp. 2d at 1333.

But here, Plaintiff's subjective symptoms go well beyond contradicting objective medical evidence: her subjective symptoms contradict each other. (Tr. 21-23). The ALJ cited to several pieces of medical evidence in the record where Plaintiff reports that her symptoms do not occur as frequently as five to seven times each day, as she stated in the March 12, 2020 hearing, (Tr. 43); six to seven seizures per week, as she stated in the October 31, 2018 hearing (Tr. 68); or 30 to 40 seizures each week, as she states leading up to her hearing. (*Id.*). The ALJ referenced an emergency room visit in 2014 where Plaintiff claims her last episode was eight months prior, a visit with a physician in 2015 where she reported her last known seizure was six months prior, and a 2018 doctor's visit in which she reported having no seizures for three months (Tr. 21, 753, 979, 2184). While an ALJ must ascertain whether the persistence of subjective symptoms is indeed real to the claimant, Plaintiff herself has a history of self-reporting that her seizures are less persistent and severe than what she claimed in her testimony. *See Bright-Jacobs*, 386 F. Supp. 2d at 1333. (Tr. 43, 68, 753, 979, 2184). An ALJ need only imply their credibility determinations in a manner that is apparent to a reviewing court, and does not need to make an express finding as to whether the claimant was malingering like Plaintiff argues. *See Tieniber*, 720 F.2d at 1255. (Doc. # 13 at 18). Therefore, substantial evidence supports the ALJ's finding that Plaintiff was not credible as to the intensity, persistence, and limiting effect of her subjective complaints of seizures and the ALJ explicitly and impliedly made her determination of credibility in regard to Plaintiff's seizures or pseudoseizures in an adequate manner.

### B. The ALJ Properly Considered Plaintiff's Failure to Seek Mental Health Treatment for a Conversion Disorder and was Not Obligated to Order Additional Testing.

Plaintiff next argues that the ALJ erroneously concluded that further evaluation of a conversion disorder was limited by a lack of evidence because she failed to attend a psychiatric

evaluation recommended by her treating physician and failed to obtain any other mental health treatment to treat her conversion disorder. (Doc. # 13 at 19; Tr. 24, 39, 1984). Plaintiff raises several arguments in support of this position. First, Plaintiff contends that the ALJ was required to order additional evaluations if she found the record lacked evidence. (Doc. # 13 at 21). Second, Plaintiff argues that her failure to seek additional mental health treatment, for reasons such as an inability to afford treatment or a desire to control her mental illness at home, should not be used against her. (*Id*. at 19). Neither argument has merit.

Both the ALJ and the claimant have certain obligations in developing and providing a sufficient record. The ALJ has a "basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(b)(1). This duty may include an obligation to order further examination, but only where the record contains insufficient evidence for the ALJ to make an informed decision. *Ingram v. Comm'r. of Soc. Sec. Admin.*, 496 F. 3d 1253, 1269 (11th Cir. 2007). The ALJ in *Ingram* did not fail to develop the record because the record contained ample evidence that the claimant's mental illness was alleviated by medication; the claimant was not so unintelligent as to require the ALJ to question her mental capacity, having obtained a commercial driver's license and working as a teacher's aide in the past; and the claimant failed to meet her "obligation to raise an issue as to her mental capacity at her hearing." *Id.* Thus, the ALJ in *Ingram* was not required to order additional testing, and did not fail to meet the ALJ's duty to develop a full record. *Id.*

Here, Plaintiff argues that the ALJ failed to meet her obligation in developing a full and fair record. (Doc. # 13 at 21). Plaintiff argues that if the ALJ found there was a lack of evidence to support further evaluation of a conversion disorder, the ALJ should have ordered additional testing. (*Id.*). Plaintiff relies on *Ingram* to support her contention. However, in *Ingram*, the ALJ

was not required to order additional testing, because the record contained evidence that the claimant's illness was alleviated by medication, the claimant demonstrated intelligence levels that did not indicate the ALJ needed to call the claimant's mental capacity into question, and the claimant failed to meet her obligation to raise an issue as to her mental capacity at her hearing. 496 F.3d at 1269. Like in *Ingram*, the ALJ here was not required to order additional testing because the record contains evidence from several sources that Plaintiff's seizures were alleviated by medication and Plaintiff agreed that her pseudoseizures were decreasing in frequency. *Id.* (Tr. 20, 21, 22, 1047, 1237). Additionally, Plaintiff's mental capacity does not suggest a lack of intelligence that would require the ALJ to question her mental capacity, as Plaintiff received a 10th grade education and obtained the necessary certification in order to work as a nursing assistant in a hospital. (Tr. 464). Further, Plaintiff only mentioned during the hearings that she wanted to manage her depression at home, raising no issue as to the impact of her mental capacity on her decision to forego mental health treatment as obligated. (Tr. 39). *See Ingram*, 496 F.3d at 1269. Like the ALJ in *Ingram* (who had sufficient evidence to make an informed decision and was not required to order additional testing), this court finds the ALJ had sufficient evidence in the record (which in fact did include one psychiatric evaluation ordered by the ALJ) to make an informed decision so as not to order any additional testing. *Id.* (Tr. 1492).

In addition to raising issues as to her mental capacity during the hearing, a claimant has several other obligations and duties of their own. *See Ingram*, 496 F.3d at 1269; 20 C.F.R. § 416.912(a)(1). First and foremost, the claimant "bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276. Therefore, the claimant is responsible for furnishing medical

and other evidence that shows they have severe impairments, and allows the ALJ to reach conclusions about their alleged impairments. 20 C.F.R. § 416.912(a)(2).

A claimant may, however, be excused from obtaining medical evidence or following certain treatment plans for limited reasons. *See* 20 C.F.R. § 416.930(c). Generally, a claimant's inability to afford treatment can support an excuse of not seeking treatment. *Ellison*, 355 F.3d at 1275 (citing *Dawkins v. Bowin*, 848 F.2d 1211, 1213 (11th Cir. 1988)). An ALJ, however, can still take the claimant's lack of treatment into consideration, so long as the ALJ does not exclusively rely on the lack of treatment as the basis of their decision. *Id*.

Additionally, a claimant's mental illness can support an excuse for the claimant's failure to seek additional treatment. In *Sparks v. Barnhart*, the claimant suffered from anxiety disorder and had regular panic attacks. 434 F. Supp. 2d 1128, 1133 (N.D. Ala. 2006). The claimant's doctors found that the reason the claimant failed to follow prescribed treatment or seek further treatment was that her panic and anxiety disorders induced fear that caused her to have poor judgment. *Id.* The court concluded that finding the claimant was not impaired because of her failure to follow recommended treatment was unfair, noting that mental illnesses are questions for experts such as psychiatrists, "not lawyers or judges." *Id.* at 1136.

Here, substantial evidence supports the ALJ's conclusion that further evaluation of Plaintiff's conversion disorder was limited by a lack of evidence. Plaintiff bears the burden of proving that her medical impairments render her disabled, requiring her to furnish medical and other evidence that allows the ALJ to conclude that Plaintiff is in fact disabled. 20 C.F.R. §§ 416.912(a)(1)-(2). Substantial evidence also supports the ALJ's conclusion that Plaintiff failed to meet this burden. The ALJ notes that "despite the overwhelming evidence that [Plaintiff's] seizures are mostly due to her psychological issues … [Plaintiff] has never sought nor received

any mental health treatment for these issues, despite having Medicaid insurance." (Tr. 23). The only reasons Plaintiff gives at her hearings for this failure to obtain the additional treatment recommended by her treating physician is that she did not "want to have to be put on any other medications" and she wanted to cope with her mental issues at home.[5] (Tr. 39).

During her hearing, Plaintiff did not mention that her failure to obtain additional treatment was because of her inability to afford treatment; rather, she argued that point to this court for the first time. (Doc # 13 at 19). While a claimant may be excused from obtaining treatment because of an inability to afford the treatment, an ALJ can still consider the claimant's lack of treatment so long as the ALJ's decision is not formed solely on the lack of treatment. *Ellison*, 355 F.3d at 1275. Here, the ALJ did note her concern that Plaintiff failed to seek mental health treatment, despite having fourteen doctor visits a year with Medicaid, and knowing that her psychological issues were likely the cause of her alleged debilitating pseudoseizures. (Tr. 23, 59, 1984). However, the ALJ did not exclusively base her decision on Plaintiff's failure to attend the recommended psychiatric evaluation. *See Ellison*, 355 F.3d at 1275. The ALJ also considered Plaintiff's subjective complaints of seizures, the objective medical evidence, EEG monitoring over two extended durations, and the medical record in its entirety to base her decision. (Tr. 21-24, 43, 1048, 1571).

Plaintiff also contends that her failure to attend recommended treatment and to seek mental health treatment was the result of her mental illness, again raising this argument for the first time. (Doc # 13 at 19). Plaintiff relies on *Sparks* to support this contention. 434 F. Supp. 2d at 1133. However, this case is distinguishable from *Sparks*. In *Sparks*, the claimant's argument for failing to follow treatment is that her panic-induced fear results in poor judgment. *Id.* Here, Plaintiff

[5] The ALJ notes that there "is no evidence that anyone suggested that [Plaintiff] take any additional medication" when referring her for a psychiatric evaluation. (Tr. 23).

testified that her failure to follow treatment was simply a desire to avoid medication, and her neuropsychological assessment with Dr. Anderson as well as her numerous follow-up visits at the Kirklin Clinic indicate she has no issues in judgment. (Tr. 39, 1023, 1028, 1247, 1495, 1822, 2170, 2178, 2186).

As *Sparks* states, mental illnesses are questions for medical experts and psychiatrists, "not lawyers or judges." 434 F. Supp. 2d at 1136. Here, the ALJ did not err in concluding that her evaluation of Plaintiff's conversion disorder was limited by a lack of medical evidence from medical experts, psychiatrists, or other evidence. *See id.*; (Tr. 24). The ALJ was not required to order additional testing in this area, and Plaintiff bore the burden of proving the severity of her conversion disorder. *See Ellison*, 355 F.3d at 1276. Substantial evidence supports the ALJ's conclusion here that Plaintiff did not meet this burden, and Plaintiff's arguments against the ALJ's evaluation of conversion disorder fail.

**C. The ALJ Afforded Proper Weight to the Opinion of Dr. Justin Anderson.**

As previously mentioned, the ALJ did order additional testing: a psychiatric evaluation performed by Dr. Justin Anderson. Plaintiff argues that the ALJ erroneously concluded that she could disregard the opinions of Dr. Anderson, the psychologist who performed a one-time consultative psychologist evaluation on her in 2018. [6] (Doc. # 13 at 21).

The weight afforded a medical source's opinion is dependent upon (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion and the medical evidence in the record as a whole. *See* C.F.R. § 404.1527(d). Generally, a medical opinion based on a one-time examination is not required any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th. Cir. 1987) (per curiam); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

[6] The ALJ did not disregard the opinion of Dr. Anderson. Rather, she afforded it little weight. (Tr. 23).

1160 (11th Cir. 2004). This is especially true when the opinion is (1) contradicted by other medical evidence; (2) uncertain due to a lack of reliability of the examinee; or (3) inconsistent with itself or the doctor's own notes. *See Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 871-872 (11th Cir. 2016) (unreported); *Crawford*, 363 F.3d at 1160; *see also Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unreported) (per curiam). An ALJ, therefore, is entitled to afford little to no weight to a one-time examiner's opinion, so long as the ALJ states with particularity the weight given to the opinion and the reasoning. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Here, the ALJ afforded proper weight to the opinion of Dr. Anderson and sufficiently stated with particularity the reasoning behind this weight. *See id.* Dr. Anderson saw Plaintiff once in 2018 and performed a subsequent consultative psychological evaluation. (Tr. 1492). Although Plaintiff incorrectly contends that the ALJ "disregarded" the opinion of the ALJ, the ALJ is entitled to do so. (Doc. # 13 at 21). Because the opinion of a one-time examining psychologist is not required any deference at all, the ALJ did not err in affording Dr. Anderson's opinion "little weight." (Tr. 23). *See Crawford*, 363 F.3d at 1160. A one-time examiner's opinion can be afforded less weight — if any at all — when it is contradicted by other record evidence; is inconsistent with the doctor's own notes; or unreliable based on either the examination itself or the participation of the claimant. *See id.* Here, the ALJ explains in her decision that Dr. Anderson rated Plaintiff's limitations in social interaction, adapting to routine stressors, and changes of a general work environment as "marked" in his opinion. (Tr. 23, 1492-93). Dr. Anderson's treatment notes, however, indicate that Plaintiff reported attending church, had no issues with crowds, and got along well with coworkers and supervisors. (Tr. 1498). Further, Dr. Anderson noted that the validity of his own testing was subject to uncertainty, as Plaintiff's performance on

a measure of efforts fell below the adequate cutoff score thereby lowering the test's validity and reliability. (*Id*). A one-time examiner's opinion that is inconsistent with itself and deemed unreliable can be afforded little weight to no weight at all. Dr. Anderson's opinion, which is inconsistent with his own treatment notes (and which he himself deemed uncertain), was properly afforded little to no weight. *See McSwain*, 814 F.2d at 619. Therefore, substantial evidence supports the ALJ's decision to afford Dr. Anderson's opinion little weight, and the ALJ stated with particularity her reasons for doing so. (Tr. 23).

**VI. Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 13, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE